UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-14072-CV-ROSENBERG
MAGISTRATE JUDGE REID

JAMES ANTWAN HASLOM,

     Petitioner,

v.

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

     Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE
## RE FEDERAL HABEAS CORPUS PETITION - 28 U.S.C. § 2254

### I. Introduction

Petitioner, **James Antwan Haslom**, a state prisoner, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [ECF No. 1]. In the Petition, he attacks the constitutionality of his convictions for the sale or delivery of cocaine and possession of cocaine, entered following a jury verdict in Martin County Circuit Court, **Case No. 12000655CFAXMX**. This case has been referred to the Undersigned for consideration and report, pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) and S.D. Fla. Admin. Order 2019-02. [ECF No. 2].

The Undersigned has reviewed the Petition [ECF No. 1], the Response [ECF No. 10], supporting appendices [ECF Nos. 11, 12], and Petitioner's Reply [ECF No. 15]. Upon review, the Undersigned **RECOMMENDS** that the Petition be **DENIED** on the merits, as discussed below.

1

## II. Claims

Construing the arguments liberally pursuant to *Haines v. Kerner,* 404 U.S. 519, 520-21

(1972) (*per curiam*), Petitioner raises the following five grounds for relief:

1.  Petitioner's constitutional right to a fair trial and due process were violated when the prosecutor used unreliable identification evidence to convict Petitioner. [ECF No. 1 at 5-16]. [1]

2.  Petitioner's constitutional right to a fair trial and due process were violated by the prosecutor who, in bad faith, destroyed material, exculpatory identification evidence that would have supported Petitioner's mistaken identity defense. [ECF No. 1 at 16-21].

3.  Petitioner's constitutional rights to due process and to confront witnesses were violated when the prosecutor filed formal charges without first receiving testimony, under oath, from material witnesses. [ECF No. 1 at 21-23].

4.  Petitioner's constitutional rights under the Fourth, Sixth, and Fourteenth Amendments were violated by law enforcement officials who unlawfully placed undercover surveillance equipment on a vehicle in order to intercept oral communications without first obtaining a warrant or consent from the vehicle owner. [ECF No. 1 at 23-26].

5.  Petitioner's constitutional rights to due process and to confront witnesses against him were violated when a prosecution witness provided hearsay testimony regarding Petitioner's identity. [ECF No. 1 at 26-31].

### III. Procedural Background

Petitioner was initially charged in a two-count Information with the sale, manufacture, or

delivery of cocaine within 1,000 feet of a park (Count 1) and possession of cocaine (Count 2).

[ECF No. 11-1, Ex. 3]. Following an evidentiary hearing on Petitioner's motion to suppress, the

court entered a written order denying the motion. [ECF No. 11-1, Ex. 7; ECF No. 12-1]. On May

---

[1] Unless otherwise noted, the page numbers referenced herein are those imprinted by the Court's electronic docketing system on the upper, right-hand corner of the filing.

22, 2015, Petitioner's appeal of this order was dismissed for failure to pay the court's filing fee and to file a statement regarding the basis for jurisdiction with the appellate court. [ECF No. 11-1, Ex. 10].

An Amended Information was then filed charging Petitioner with the sale, manufacture, or delivery of cocaine within 1,000 feet of a park, community center, or recreational facility, in violation of Fla. Stat. § 893.13(1)(c)1 (Count 1) and actual or constructive possession of cocaine or a mixture containing cocaine, in violation of Fla. Stat. § 893.13(6)(a) (Count 2). [ECF No. 11-1, Ex. 9]. Petitioner proceeded to trial where he was convicted as to Count 1 of sale or delivery of cocaine, as a lesser included offense, and guilty of possession of cocaine, as charged in Count 2. [ECF No. 11-1, Ex. 11]. He was adjudicated guilty and sentenced to a term of eight years of imprisonment as to Count 1, and a consecutive term of three years of imprisonment as to Count 2. [ECF No. 11-1, Ex. 12].

Petitioner appealed *pro se*, raising the following five grounds for relief, *verbatim*:

1.   The trial court erred in denying appellant's motion to suppress videotape and in-court identification. [ECF No. 11-1, Ex. 14 at 102].

2.   When the state fails to preserve evidence for discovery that it intends to use at trial, and uses that evidence to convict appellant[,] appellant's rights to due process of law has been violated. [*Id.* at 109].

3.   Detective Dykes was not the material witness and the state should not have relied solely on Detective Dykes' arrest affidavit when signing the Information. [*Id.* at 119].

4.   The trial court committed reversible error by not suppressing communications and evidence derived from the use of a vehicle, as a facility to intercept communications, in violation of the wiretap statue. [*Id.* at 122].

5.   The trial court committed reversible error when it allowed a witness for the state to testify to hearsay concerning appellant's identity. [*Id.* at 126].

3

On **March 8, 2018,** the Florida Fourth District Court of Appeal *per curiam* affirmed the judgment in a decision without written opinion. *See Haslom v. State*, No. 4D15-2437, 241 So. 3d 159 (Fla. 4th DCA Mar. 8, 2018), [ECF No. 11, Ex. 17]. After no rehearing motion was filed, the mandate issued on **April 5, 2018.** [ECF No. 11-1, Ex. 18].

Petitioner was not permitted to seek discretionary review with the Florida Supreme Court because the affirmance on direct appeal did not cite to any decision for which the Florida Supreme Court had accepted review. *See Wells v. State*, 132 So. 3d 1110, 1113 (Fla. 2014). Therefore, Petitioner's judgment of conviction became final, and the federal limitations period, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), as amended, began running on **Wednesday, June 6, 2018,** ninety days after the state appellate court issued its opinion affirming the judgment of conviction, when the period for seeking discretionary review with the Supreme Court of the United States expired. *See* Sup. Ct. R. 13; *see also Gonzalez v. Thaler*, 565 U.S. 134, 154 (2012).

On **February 19, 2019,** approximately **eight months** after his conviction became final, Petitioner came to this Court, timely filing his Petition for Writ of Habeas Corpus. [ECF No. 1].

### IV. Threshold Issues - Timeliness and Exhaustion

### A. Timeliness

Respondent concedes that the Petition is timely. [ECF No. 10 at 6]. As discussed above, because there was less than one-year of un-tolled time during which no post-conviction proceedings were pending from the time Petitioner's conviction became final and the filing of the Petition, the case is timely filed. *See Pace v. DiGuglielmo,* 544 U.S. 408, 413 (2005); *see also*

*Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1315-16 (11th Cir. 2006) (citing *Artuz v. Bennett,* 531 U.S. 4, 8, 11 (2000)).

## B. Exhaustion

Petitioner asserts that all the claims were properly exhausted on direct appeal of the judgment of conviction. [ECF No. 1 at 15, 20, 22, 26, 28]. Respondent concedes that **claims 1 and 2** were properly exhausted, but argues that **claims 3, 4, and 5** are unexhausted because Petitioner did not cite to federal case law or label his claims as "federal" in the state direct appeal. [ECF No. 10 at 13-14]. Petitioner filed a Reply, addressing only claims 1 and 2, and does not rebut Respondent's exhaustion defense as to claims 3 through 5. [ECF No. 15]. Upon review, Respondent's argument regarding the procedural default of claims 3 through 5 is correct.

In addressing the issue of exhaustion and procedural default, the Court must determine whether the claims were properly raised in the state court proceedings; and if not, whether they are procedurally defaulted from review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging a state conviction. *See* 28 U.S.C. § 2254(b), (c); *see also Davila v. Davis*, 582 U.S. ___, 137 S. Ct. 2058, 2064 (2017) (citing § 2254(b)(1)(A)).

"The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upsett[ing] a state court conviction without" first according the state courts an 'opportunity to . . . correct a constitutional violation,'. . ." *Davila*, 137 S. Ct. at 2064 (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)); *see also Rivera v. Sec'y, Dep't of Corr.,* 737 F. App'x 946, 952-53 (11th Cir. 2018) (*per curiam*) (quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999)). Therefore, to properly exhaust state remedies, a petitioner must fairly present every issue raised in his or her

5

federal petition through "one complete round of the State's established appellate review process," either on direct appeal or on collateral review. *Kirksey v. Sec'y, Fla. Dep't of Corr.*, No. 17-13369-A, 2018 U.S. App. LEXIS 32426, 2018 WL 7139263, at *5 (11th Cir. Nov. 15, 2018) (citing *O'Sullivan*, 526 U.S. at 845; 28 U.S.C. § 2254(b)(1)).

Exhaustion is not satisfied if a habeas petitioner merely presents the state court with "all the facts necessary to support the claim" or even if a "somewhat similar state-law claim was made." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004) (citation omitted). A petitioner must instead "present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Id.* For example, "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese,* 541 U.S. 27, 32 (2004); *see also McNair v. Campbell,* 416 F.3d 1291, 1302-1303 (11th Cir. 2005).

This requirement ensures that the state courts will have the first opportunity to hear all claims a petitioner later "urges upon the federal courts." *McNair,* 416 F.3d at 1302 (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971)).

To circumvent the exhaustion requirement, a petitioner must establish that there is an "absence of available state corrective process" or that "circumstances exist that render such process ineffective to protect [his] rights." 28 U.S.C. § 2254(b)(1)(B); *Duckworth v. Serrano,* 454 U.S. 1, 3 (1981). Petitioner has not done so here. Careful review of Petitioner's initial brief on direct appeal confirms he did not exhaust claims 3, 4, and 5. On direct appeal, Petitioner raised the claims solely

6

in terms of violation of state law, as none of the claims relied upon any federal constitutional provision or federal case law, nor did the claims, as worded, alert the state appellate court that it also raised a violation of federal law.

It is worth mentioning that, contained within his argument on **claim 4,** Petitioner stated that, "federal law requires authorization to intercept wire, oral, or electric communication. The state preempts federal statute when it intercepts communications without first obtaining authorization, as the situation is here in Appellant's case." [ECF No. 11, Ex. 14 at 125]. This, however, is insufficient to put the state appellate court on notice of the federal nature of the claim as the claim, as worded, did not. *See McNair*, 416 F.3d at 1304. Thus, claims 3, 4, and 5 are not exhausted.

### C. Procedural Default

It must next be determined whether Petitioner's failure to exhaust **claims 3, 4, and 5** resulted in procedural default. A federal habeas petitioner's failure to properly present his claim on direct appeal generally precludes federal habeas review of the claim. *See Coleman v. Thompson,* 501 U.S. 722, 735 n.1(1991) (citing *Harris v. Reed,* 489 U.S. 255, 269-270 (1989) (O'Connor, J., concurring)); *see also Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001). Where an unexhausted claim would be subject to a state procedural bar if the petitioner returned to state court, the district court may treat the claim as procedurally defaulted for purposes of federal habeas corpus relief, even absent a state court determination to that effect, if it is clear that any future attempts at exhaustion would be futile under state law. *See Bailey v. Nagle,* 172 F.3d 1299, 1302-03 (11th Cir. 1999).

Petitioner's unexhausted claims would now be procedurally barred if raised in the state courts because he has already completed a direct appeal. *See id.* In this case, a future attempt to exhaust in state court would be futile under the state's procedural default doctrine. *See id.*

However, a procedurally defaulted claim may still be considered if the federal petitioner can demonstrate (1) objective cause for the failure to properly present the claim and actual prejudice from the alleged constitutional violation; or, (2) a fundamental miscarriage of justice. *See Wainwright v. Sykes,* 433 U.S. 72, 87 (1977); *see also Tharpe v. Warden,* 898 F.3d 1342, 1346 (11th Cir. 2018). As discussed below, no such showing has been made here.

Petitioner can show cause by alleging that some objective factor, external to the defense, impeded his effort to raise the claim properly in the state court. *See Tharpe,* 898 F.3d at 1346 (citing *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999)). Petitioner has not alleged or demonstrated that there was some objective factor that impeded his effort to properly raise the claims on direct appeal. Consequently, claims 3, 4, and 5 are unexhausted and procedurally defaulted from review in this habeas corpus proceeding.

### V. Governing Legal Principles

"'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)) (quotation marks omitted)). This standard is both mandatory and difficult to meet. *See White v. Woodall,* 572 U.S. 415, 420 (2014).

The AEDPA provides that a federal court may not grant a habeas petition relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Harrington v. Richter,* 562 U.S. 86, 97-98 (2011); *Rimmer v. Sec'y, Fla. Dep't of Corr.,* 876 F.3d 1039, 1053 (11th Cir. 2017).

The AEDPA imposes a "highly deferential standard for evaluating state-court rulings and demands that state court decisions be given the benefit of the doubt." *Renico v. Lett,* 559 U.S. 766, 773 (2010) (quotation marks and citation omitted); *see also Lee v. Comm'r, Ala., Dep't of Corr.,* 726 F.3d 1172, 1192 (11th Cir. 2013) (citations omitted). The Eleventh Circuit "'has stressed that in applying AEDPA deference federal courts are not to take a magnifying glass to the state court opinion or grade the quality of it.'" *Wiggins v. Sec'y, Fla. Dep't of Corr.,* 766 F. App'x 817, 821 (11th Cir. 2019) (*per curiam*) (quoting *Meders v. Warden, Ga. Diagnostic Prison,* 911 F.3d 1335, 1350 (11th Cir. 2019)). Thus, deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster,* 563 U.S. 170, 182 (2011); *see also Gill v. Mecusker,* 633 F.3d 1272, 1288 (11th Cir. 2011).

For purposes of federal habeas review, "clearly established federal law" consists of the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 365 (2000). The relevant law is the federal law that existed on the date a petitioner's conviction became final. *See Gary v. Hall,* 558 F.3d 1229, 1254 (11th Cir. 2009). "A Supreme Court decision, which is not dictated by precedent or is not made retroactive to cases on collateral review, handed down after the petitioner's conviction

becomes final does not control the disposition of the petitioner's habeas proceeding." *Id*. (citing *Newland v. Hall,* 527 F.3d 1162, 1196–1201 (11th Cir. 2008)).

To review a federal habeas corpus claim, the district court must first identify the last state court decision, if any, that adjudicated the merits of the claim. *See Marshall v. Sec'y, Fla. Dep't of Corr.,* 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference. *See Harrington,* 562 U.S. at 100; *see also Meders,* 911 F.3d at 1351 (citing *Harrington,* 562 U.S. at 100). To be entitled to federal habeas corpus relief, a petitioner must show that the state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Lee,* 726 F.3d at 1192 (quoting *Harrington,* 560 U.S. at 101-102).

A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law set forth by the United States Supreme Court, or arrives at a result that differs from Supreme Court precedent when faced with materially indistinguishable facts. *See id.* (quoting *Bell v. Cone,* 535 U.S. 685, 694 (2002)). "A state court decision involves an 'unreasonable application' of clearly established federal law 'if the state court correctly identifies the governing legal principle' from the relevant Supreme Court decisions 'but unreasonably applies it to the facts of the particular case.'" *Id.* (quoting *Bell,* 535 U.S. at 694); *see also Williams,* 529 U.S. at 413. The term "clearly established Federal law" refers to the decisions and not *dicta* of the Supreme Court, at the time of the relevant state court decision. *See Lee,* 726 F.3d at 1192

10

(quoting *Williams,* 529 U.S. at 412; *Burns v. Sec'y, Fla. Dep't of Corr.*, 720 F.3d 1296, 1301-02 (11th Cir. 2013)).

However, "[C]ircuit precedent may not be used 'to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Id.* (quoting *Marshall v. Rodgers,* 569 U.S. 58, 62 (2013)). Thus, where there is Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods v. Donald*, 575 U.S. 312, 317-18 (2015). If, however, the state court decision is contrary to clearly established federal law, the federal habeas corpus court must independently consider the merits of Petitioner's claim. *See Panetti v. Quarterman,* 551 U.S. 930, 954 (2007).

Notably, where "no state court has adjudicated the merits of a claim that was properly presented, 'federal habeas review is not subject to the deferential standard that applies under AEDPA. . . . Instead, the claim is reviewed *de novo.*'" *Reaves v. Sec'y, Fla. Dep't of Corr.,* 872 F.3d 1137, 1151 (11th Cir. 2017) (alteration in original) (quoting *Cone,* 556 U.S. at 472). In *Johnson v. Williams,* 568 U.S. 289 (2013), the Supreme Court explained that a state court decision is an adjudication "on the merits" and still entitled to AEDPA deference when it "addresses some but not all of a defendant's claims." *Johnson,* 568 U.S. at 298. "The Supreme Court observed that there are good reasons why state courts do not address every single argument made by a defendant, including 'instances in which a state court may simply regard a claim as too insubstantial to merit discussion.'" *Lee*, 726 F.3d at 1212 (quoting *Johnson,* 568 U.S. at 299). The Supreme Court cautioned that "federal courts have no authority to impose mandatory opinion-writing standards on state courts," and due to the heavy caseload shouldered by many appellate courts, "opinions

11

issued by these courts must be read with that factor in mind." *Id.* (quoting *Johnson,* 568 U.S. at 299-300).

In any event, this court is authorized to deny a claim for federal habeas corpus relief when the claim is subject to rejection under *de novo* review, regardless of whether AEDPA deference applies. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (holding federal courts can deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petition will not be entitled to habeas relief if his claim is rejected on *de novo* review); *see also Connor v. GDCP Warden,* 784 F.3d 752, 767 n. 16 (11th Cir. 2015) ("[B]ecause we conclude that Mr. Connor would not be entitled to habeas relief under *de novo* review, we affirm the District Court's denial of relief under that standard without resolving whether AEDPA deference applies."). The "AEDPA's statutory scheme is designed to strongly discourage" petitioners from presenting new evidence and ensures that "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Cullen,* 563 U.S. at 185 (citations omitted).

Finally, it is well settled that Petitioner bears the burden of establishing his right to relief and proving all of the facts necessary to demonstrate a constitutional violation. *See Romine v. Head,* 253 F.3d 1349, 1357 (11th Cir. 2001)).

### VI. Discussion of Claims

### A. Reliability of Identification and Introduction of Videotape Evidence

In **claim 1,** Petitioner asserts that his constitutional rights were violated because the trial court allowed the prosecutor to use unreliable identification evidence to convict him. [ECF No. 1 at 5]. Petitioner argues the trial court erred in denying his motion to suppress videotape evidence

12

and in-court identification based on mistaken identity and an unduly suggestive identification procedure. [*Id.*]. He maintains his confrontation rights were violated by allowing the prosecution to utilize a suggestive means of identification in violation of the trial court's order. [*Id.*].

Respondent argues Petitioner is not entitled to relief because the confidential informant's review of the videotape was not an identification procedure, but, even if it were, there was no substantial likelihood of an irreparable misidentification. [ECF No. 10 at 18-23]. As discussed below, Petitioner is not entitled to relief on this claim.

Petitioner raised this claim on direct appeal. [ECF No. 11-1, Ex. 14 at 102-109]. It was rejected by the appellate court, when the judgment of conviction was *per curiam* affirmed in a decision without written opinion. *See Haslom v. State,* 241 So. 3d 159 (Fla. 4th DCA 2018), [ECF No. 11-1, Ex. 17].

1. <u>Relevant Facts</u>

*a. Motion to Suppress Hearing*

Petitioner filed a motion to suppress, which was the subject of an evidentiary hearing, during which the prosecution called the following witnesses: Assistant State Attorney ("ASA") David Lustgarten, Detective Travis Dykes ("Det. Dykes"), Deputy Joseph Collazo ("Dep. Collazo"), and the confidential informant, Albert Alan Barr ("CI Barr") testified. [ECF No. 11-1, Exs. 4-5; ECF No. 12-1]. The defense called John Milano, an investigator with Milano Bail Bonds. [ECF No. 12-1 at 120].

Briefly, at the evidentiary hearing, ASA Lustgarten testified he directed Det. Dykes to review the videotape with CI Barr prior to Barr's deposition so that CI Barr's testimony could be as accurate as possible and so that the videotape could be authenticated at trial. [*Id.* at 23-24]. Det.

13

Dykes testified that on March 31, 2012 he asked CI Barr to assist in an undercover operation called "Operation Hit the Block." As part of the operation, CI Barr purchased cocaine from drug dealers including Petitioner.  [*Id.* at 34-35, 106, 458]. Det. Dykes was with CI Barr in Hobe Sound on the day of the video recorded transaction. [*Id.* at 35-36]. While he did not recognize the person who sold CI Barr the drugs at the time, he showed the videotape to Dep. Tyson and Dep. Baltes who knew and identified Petitioner by name. [*Id.* at 37-38]. At the hearing, CI Barr also identified Petitioner as the individual who sold him the drugs on March 31, 2012. [*Id.* at 77]. CI Barr also testified that when he saw the video, he recognized Petitioner, even though he may not have known Petitioner's name. [*Id.* at 93]. On March 10, 2015, in a detailed, written order, the trial court denied the motion to suppress. [ECF No. 11-1, Ex. 7].

*b. Trial Testimony*

At trial, Dep. Dykes, CI Barr, Dep. Baltes, Captain John Budensiek, Jr. ("Capt. Budensiek"), Salvatore Recco, a chemist with the Indian River Crime Lab ("Recco") testified as prosecution witnesses. [ECF No. 12-2]. Dep. Dykes confirmed he was part of an operation called "Hit the Block," where CI Barr was recruited and paid $25.00 per hour to purchase narcotics on more than 100 occasions, involving between forty to sixty people. [*Id*. at 51-55]. A local car dealer provided a small "run-of-the-mill Chevy pickup truck" on which law enforcement mounted a removable video camera on its exterior. [*Id*. at 56, 150-53]. Dep. Dykes further testified he was able to hear the live exchange between CI Barr and Petitioner. [*Id*. at 79]. On the video, Dep. Dykes explained that the audio is not very clear, but you can hear what is being said inside the vehicle through a cellphone, and see CI Barr and Petitioner conversing, and observe the passenger door open and close, and then the vehicle move forward. [*Id*. at 63-64, 80]. According to Dep. Dykes,

he wrote the arrest affidavit based on what he observed on the videotape, from listening to the transaction live through a cellphone, and from CI Barr's statement. [*Id.* at 142-43, 168]. Dep. Dykes confirmed Petitioner was the individual captured on the videotape. [*Id.* at 163].

CI Barr testified he was aware there was a video recorder at the rear of the truck, pointing towards the driver's window area. [*Id.* at 185]. On March 31, 2012, he was working with Det. Dykes and was routinely searched before and after every drug purchase. [*Id.* at 187]. On that day, CI Barr met Petitioner, who asked CI Barr what he needed. [*Id.* at 190-91]. CI Barr responded he was trying "to get 60 hard," commenting he had been getting a lot of "junk." [*Id.* at 191]. CI Barr explained that, during other drug buys, he had "been ripped off," having been given "gravel," a "peanut," and "bread." [*Id.*]. Fearing he would be "ripped off," CI Barr refused to give Petitioner the money for the drug purchase, and rather than hold Petitioner's car keys, Petitioner suggested that CI Barr drive him to get the drugs. [*Id.* at 191-92]. Upon arrival at the destination, Petitioner exited the truck and returned immediately handing CI Barr the cocaine. [*Id.* at 193]. After dropping Petitioner off, CI Barr returned to the pre-arranged staging area, where he then handed the drug purchase to Det. Dykes, who placed it in a plastic evidence bag. [*Id.* at 193-94].

According to Petitioner, after returning to the staging area following a drug purchase, they would remove the SIM card from the video camera, insert it into a computer to ensure that the camera had worked and recorded the transaction. [*Id*. at 194-95]. CI Barr then identified state's exhibit number one for identification as a copy of the videotape of the transaction with Petitioner that day, confirming he had signed and dated it. [*Id.* at 197-98]. The videotape was then played for the jury, and the events depicted described by CI Barr. [*Id.* at 198-206]. CI Barr confirmed that, at the time, he was asked whether he knew Petitioner, and he indicated he did not. [*Id.* at 206]. He

did not learn Petitioner's name until much later, when he was advised he was scheduled for a deposition. [*Id.* at 208]. At trial, however, CI Barr stated he had no doubt "whatsoever" that the individual seen on the March 31, 2012 videotape, who sold him the drugs, was, in fact, the Petitioner, who was sitting in the courtroom. [*Id.* at 207]. CI Barr confirmed he did not know Petitioner at the time of the controlled buy, but in accordance with established "protocol," it was his "habit" to describe to law enforcement the seller, including the clothing he or she was wearing, and the direction he or she was headed. [*Id.* at 237, 239]. He could not recall providing a signed statement describing the event.[2] [*Id.* at 252-54]. He believed he would have provided law enforcement with a verbal, general summary of what transpired and how the sale "went down." [*Id.*].

Dep. Dykes was recalled and testified that when CI Barr returned to the staging area following the drug purchase, he provided Dep. Dykes with a substance which appeared to be and then field-tested positive for crack cocaine. [*Id.* at 257-58]. The drugs were then placed into an evidence bag, sealed shut, and an evidence tape placed over the seal bearing Dep. Dykes' initials. [*Id.* at 258]. Trial testimony from a crime lab forensic examiner confirmed the substance purchased from Petitioner contained cocaine and weighed .01 grams. [*Id.* at 301].

Dep. Dykes also confirmed he measured the distance from where the drug purchase occurred and the park nearby. [*Id.* at 266]. According to Dep. Dykes, the distance between the two points was less than 1,000 feet. [*Id.* at 267].

---

[2] Capt. John Budensiek, Jr. testified he recruited CI Barr to work as a confidential information during the operation, having known CI Barr since childhood, and they attend the same church. [*Id.* at 315]. He also confirmed that, other than the videotape of the transaction between CI Barr and Petitioner, and the debriefing by the detectives involved, CI Barr provided no written statement to law enforcement. [*Id.* at 344-45].

Dep. Baltes testified he has known an individual named James Haslom for approximately eight years. [*Id.* at 308]. He then identified in-court that individual as Petitioner.[3] [*Id.* at 308-09]. He also confirmed having reviewed the videotape introduced into evidence and affirmed the individual depicted on the recording was Petitioner, James Haslom. [*Id.* at 309].

Petitioner pursued a mistaken identity defense. [*Id.* at 63-62]. At trial, he attempted to discredit CI Barr and the method used by law enforcement to conduct the undercover drug buy. [*Id.* at 374-98, 452-74, 484-94, 505-11, 526-578]. He called witnesses, including a convicted felon, to testify that CI Barr solicited prostitutes, purchased stolen merchandise, and smoked crack cocaine. [*Id.*]. He also attempted to establish that CI Barr and law enforcement did not follow proper law enforcement policies when handing money to CI Barr to conduct the numerous drug purchases conducted that day. [*Id.*].

Although Det. Collazo was called as a defense witness, in response to Petitioner's questioning, he testified that Dep. Bryan Tyson viewed the videotape of Petitioner's drug sale to CI Barr, and identified the name of the individual depicted on the videotape selling CI Barr the drugs. [*Id.* at 511]. He explained he knew Petitioner, having previously arrested Petitioner on separate criminal charges. [*Id.*]. It was also established that it was unnecessary for CI Barr to know Petitioner's name. [*Id.*]. What was important was for CI Barr to be able to physically identify Petitioner as the individual that sold him the drugs. [*Id.* at 514, 519].

---

[3] The state court had prohibited the prosecution from presenting during its case that Dep. Baltes was in law enforcement and the specifics on how he learned of Petitioner's identity unless Petitioner opened the door to the line of inquiry during cross-examination. [*Id.* at 277-78, 286-87].

2. <u>Reliability of Identification</u>

At trial and on appeal, Petitioner has attempted to establish that the court erred in failing to suppress unreliable identification evidence. Petitioner suggests that his conviction was based solely on CI Barr's unreliable testimony. He claims CI Barr's in-court identification of him violated his due process rights because it was predicated on an unduly suggestive out-of-court identification.

Both Florida and federal courts employ the same standard to determine if an identification should be excluded. *See Perry v. New Hampshire,* 565 U.S. 228, 232 (2012); *see also Lynch v. State,* 260 So. 3d 1166, 1170 (Fla. 1st DCA 2018) (citing *Perry*, 565 U.S. at 232). Petitioner's due process rights, based on the admission of eyewitness identification, is violated "when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." *Rivera v. Sec'y, Dep't of Corr.,* No. 16-15126-E, 2017 U.S. App. LEXIS 14121, 2017 WL 3224644, at *2 (11th Cir. Jun. 8, 2017) (quoting *Perry,* 565 U.S. at 232).

Factors to consider in assessing the reliability of the identification include: (1) the witness's opportunity to view or hear the criminal; (2) the degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of the witness's certainty; and, (5) the length of time between the crime and identification. *See id.* at *2 (quoting *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)). After considering these factors, an identification will only be suppressed if there is a "very substantial likelihood of irreparable misidentification." *Perry,* 565 U.S. at 228; *see also Irwin v. McDonough,* 243 F. App'x 486, 492 (11th Cir. 2007) (per curiam) (quoting *Stano v. Denno,* 388 U.S. 293, 302 (1967)).

18

As applied, Petitioner has not demonstrated in the state forum or this habeas proceeding that the trial court's denial of Petitioner's motion to suppress based on "an unnecessarily suggestive identification procedure" was erroneous. The trial court denied relief following an evidentiary hearing, finding that "witnesses like Mr. Barr, are often shown items such as video tapes by the State to refresh their recollection prior to and in preparation for a discovery deposition." [ECF No. 11, Ex. 7 at 56]. The state court further determined that Petitioner was not entitled to be present prior to or during preparation for a discovery deposition" of a prosecution witness. [*Id.*].

Also, the evidence at the suppression hearing and trial confirmed that Petitioner was the individual who sold CI Barr crack cocaine on March 31, 2012, and the identification was based on CI Barr's own observations and recollections, not just on the videotape. Consideration of the *Biggers* factors supports the state court rejection of the claim. *See United States v. Summers,* 422 F. App'x 838, 840 (11th Cir. 2011) (finding no confrontation violation where defendant had full opportunity to examine witness regarding his memory, potential bias and recollection of events) (citing *United States v. Baptista-Rodriguez,* 17 F.3d 1354, 1371 (11th Cir. 1994) ("the Constitution is offended only when the defendant is denied the opportunity effectively to attack the credibility of the prosecution's witness[].")). CI Barr testified at length regarding his recollection and observations and was subject to cross-examination by Petitioner regarding the accuracy of his recollection in an effort to support Petitioner's mistaken identity defense.

Although, as Petitioner suggests, under Florida's "silent witness theory"[4] CI Barr did not need to testify because there was a videotape of the transaction, in this case CI Barr did testify and was subject to cross-examination regarding the contents of the videotape and his recollection of the drug purchase. His argument that CI Barr's testimony was unreliable because he was permitted to view the videotape outside the presence of the jury has been rejected by the Eleventh Circuit. *See United States v. Summers,* 422 F. App'x 838, 840 (11th Cir. 2011) (citing *Jenkins v. United States,* 404 F.2d 873, 874 (5th Cir. 1968)(holding that matters raised outside the jury's presence does not affect a prisoner's right to a jury trial.)). Here, not only did CI Barr refresh his recollection with the videotape prior to his deposition, but a proffer was held regarding his testimony and the videotape outside the jury's presence at trial. On this record, Movant has not shown that his Sixth Amendment rights was violated, much less that allowing CI Barr to testify that Petitioner was the individual depicted on the videotape was based on an unreliable identification. The rejection of this claim on direct appeal should not be disturbed here. *See Williams, supra.*

3. Violation of Petitioner's Confrontation Rights

Petitioner argues his confrontation rights were violated when CI Barr was allowed to review the videotape, prior to trial, with the assistance of law enforcement and outside of Petitioner's presence. For the reasons previously stated, there was no confrontation rights violation. Because the jury was allowed to assess the witness's credibility and possible motives

---

[4] Under the "silent witness" theory of admissibility of a videotape, if "no witness who is available has seen what a videotape or a photograph depicts, proof of surrounding circumstances may nevertheless 'be sufficient for the court to find that the photograph is a fair and accurate representation of a material fact.'" *Bryant v. State,* 810 So. 2d 532, 536 (Fla. 1st DCA 2002) (citations omitted).

for bias, the Sixth Amendment was satisfied. *See e.g., De Lisi v. Crosby,* 402 F.3d 1294, 1303 (11th Cir. 2005).

Petitioner has not demonstrated that he was prohibited from engaging in cross-examination. *See Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986); *see also Crawford v. Washington,* 541 U.S. 36, 59 (2004). The videotape was not introduced by the prosecution to establish the truth of the matter asserted, but only to support CI Barr's testimony that Petitioner was the individual who sold him the cocaine on March 31, 2012. Even assuming the videotape somehow contained testimonial evidence, it appears to have been introduced to place the investigation and the footage of Petitioner in context. *See United States v. Taylor,* 688 F. App'x 638, 643 (11th Cir. 2017) (finding admission of videotape footage was not offered for its truth, but only to place investigation and footage of defendant in context).

Moreover, Petitioner's confrontation rights were not violated because he was permitted to engage in extensive cross-examination of CI Barr so that "a reasonable jury might receive a significantly different impression of a witness's credibility based on the questioning. *See id.* Because CI Barr was available at trial and subject to cross-examination, and the videotape was not offered to prove the truth of the matter asserted, it did not violate Petitioner's confrontation rights. On this record, Petitioner has not demonstrated that rejection of this claim by the state courts, on direct appeal, was unreasonable. Relief is therefore not warranted. *See Williams, supra.*

4. Admissibility of Videotape Evidence

Next, Petitioner appears to argue that the videotape was inadmissible hearsay evidence. He suggests that the videotape was not properly authenticated and should not have been admitted at trial.

Under federal law, before an item is admitted into evidence, it must be authenticated with evidence "sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Civ. P. 901(a); *see also Taylor,* 688 F. App'x at 641 (citing *United States v. Belfast,* 611 F.3d 783, 819 (11th Cir. 2010)). Further, "evidence may be authenticated by its 'appearance, contents, substance, internal patterns, or other distinctive characteristics . . . taken together with all the circumstances.'" *Id.* (quoting Fed. R. Evid. 901(b)(4)). Authentication may also be established "'solely through the use of circumstantial evidence.'" *Id.* (quoting *United States v. Smith,* 918 F.2d 1501, 1510 (11th Cir. 1990)).

Florida law also requires that evidence be authenticated. *See* Fla. Stat. § 90.901. Like its federal counterpart, Florida law is similar in its requirement that video recordings be authenticated prior to admission at trial. *See Richardson v. State,* 228 So. 3d 131, 133-35 (Fla. 4th DCA 2017) (citing *Gulf Life Ins. Co. v. Stossel,* 131 Fla. 127, 179 So. 163 (1938)). To admit a video recordings as competent evidence, a petitioner must properly authenticate and show it to be a faithful representation of the subject, sound, movement, or other intangible or intangible thing which they purport to reproduce. *See id.* (citing *Gulf Life,* 131 So. at 163); *see also Perez v. State,* 856 So. 2d 1074, 1076-77 (Fla. 5th DCA 2003).

Review of the record confirms that Petitioner and the prosecution stipulated to the admission of the videotape at trial. [ECF 12-2 at 553-54]. CI Barr explained that a video camera had been positioned in the rear of the truck he used during the controlled buy with Petitioner. [*Id.* at 185]. CI Barr explained he reviewed the videotape prior to his deposition and before trial and affirmed that Petitioner was, in fact, the individual depicted in that video. [*Id*. at 197-98]. He knows this because after viewing it he signed and dated the video. [*Id.* at 198]. He further confirmed that,

22

as memorialized on the videotape, he purchased cocaine from Petitioner on March 31, 2012. [*Id.*]. The videotape was also introduced at trial as state's exhibit 1 without objection. [*Id.*]. The videotape was then played to the jury as the witness was questioned regarding what was depicted thereon. [*Id.* at 198-208]. CI Barr had no doubt that the individual depicted on the videotape was Petitioner, who he identified in court. [*Id.* at 208].

Petitioner has not demonstrated either in the state forum or this habeas proceeding that the videotape was not properly authenticated, much less that it was not "a faithful representation of the subject, sound, movement, or other intangible or intangible thing which they purport to reproduce." *Richardson,* 228 So. 3d at 133-35 (citing *Gulf Life,* 131 So. at 163); *see also Perez,* 856 So. 2d at 1076-77. Thus, no error in its admission has been established. In any event, the jury was able to observe the individual conducting the sale of narcotics, and then compare him to Petitioner. [*Id.*].

Finally, the jury was properly instructed on weighing the credibility of the evidence, and it is presumed it followed the court's instructions in this regard. [ECF No. 12-2 at 682-84]. Because Petitioner proceeded *pro se* at trial, the state court allowed him considerable leeway in cross-examining CI Barr regarding his memory, the purported inconsistencies in his testimony, his motive for testifying, and the benefits he received from the state from which the jury could adequately assess his credibility. [*Id.* at 212-56].

Further, the Petitioner introduced the video recording as defense exhibit no. 4 at trial. [*Id.* at 553-54]. Petitioner called CI Barr during its case, in an effort to discredit CI Barr's testimony regarding his identification of Petitioner, the manner in which he made the controlled drug purchases from Petitioner, and his motive for testifying against him. [*Id.* at 559-561, 572-75].

Petitioner has not demonstrated in the state forum or this habeas proceeding that admission of the videotape was improper, much less that it was not properly authenticated. Therefore, the rejection of this claim on direct appeal should not be disturbed here. *See Williams, supra.*

### B. Destruction of Material Exculpatory Evidence

In **claim 2,** Petitioner asserts that the prosecutor, in bad faith, destroyed material exculpatory identification evidence which would have supported Petitioner's mistaken identity defense. [ECF No. 1 at 16-21]. Petitioner maintains it was error for the prosecutor to advise CI Barr it was not his responsibility to identify the individual who sold him the drugs in "Operation Hit the Block." [*Id.* at 16]. Petitioner suggests that Det. Dykes did not follow law enforcement policies and procedures in that he failed to do a "live line-up, show-up, or photographic line-up." [*Id.* at 18]. He maintains Det. Dykes could not offer a "good faith" explanation why no such identification was conducted. [*Id.*]. Petitioner suggests the destruction of evidence occurred when CI Barr was "misinstructed" that he need not identify the individual who sold him the drugs. [*Id.*]. Petitioner suggests that during "the months leading up to the jury trial," Det. Dykes and Det. Collazo told CI Barr that the individual depicted on the videotape was "the Petitioner James Haslom." [*Id.* at 19]. He suggests CI Barr "had no independent basis for his in-court identification and was only acquiescing to what others had told him." [*Id.*]. The gist of Petitioner's arguments here and in the state court are that the prosecution violated *Brady*[5], by purposefully destroyed exculpatory evidence, and violated *Arizona v. Youngblood*,[6] by failing to preserve useful misidentification defense evidence.

---

[5] *Brady v. Maryland*, 373 U.S. 83, 83 (1963).
[6] *Arizona v. Youngblood,* 488 U.S. 51 (1988).

Respondent argues that the rejection of the claim on direct appeal was in accordance with federal constitutional principles and, as such, should not be disturbed here because Petitioner failed to demonstrate that law enforcement "destroyed anything, let alone made a showing that the government acted in bad faith in failing to obtain a recorded statement from Mr. Barr." [ECF No. 10 at 26-27]. For the reasons discussed below, this claim fails on the merits.

The Supreme Court of the United States has made clear that a criminal defendant is entitled to exculpatory evidence, pursuant to *Brady*, and a constitutionally guaranteed access to potentially exculpatory evidence. *See Youngblood,* 488 U.S. at 55, 57 (quotation omitted). "A due process violation under *Brady* requires a defendant to establish "'that the prosecution withheld favorable evidence and that he was prejudiced as a result.'" *United States v. Castro*, 795 F. App'x 635, 652 (11th Cir. 2019) (*per curiam*) (quoting *United States v. Hano,* 9 F.3d 907, 910 (11th Cir. 1993)).

The exculpatory evidence must be "constitutionally material," which requires proof "'that had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (quoting *Hano,* 9 F.3d at 910). "A 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Hano,* 9 F.3d at 910).

To demonstrate a due process violation arising from the destruction of potentially favorable evidence under *Youngblood,* Petitioner must demonstrate that the "lost evidence 'was likely to significantly contribute to his defense.'" *Id.* at 652-53 (quoting *California v. Trombetta,* 467 U.S. 479, 488 (1984)).

1. *Brady* Claim

As applied, Petitioner has not demonstrated either in the state forum or this habeas proceeding that the prosecution withheld exculpatory evidence. Petitioner suggests that CI Barr

25

could not "identify" Petitioner as the individual who sold him the drugs in March 2012. [ECF No. 15 at 5]. He suggests that CI Barr should have been shown a photographic lineup in order to ascertain Petitioner's identity. [*Id.*]. Petitioner believes it was error for law enforcement to inform CI Barr he was not responsible for identifying the individuals he purchased drugs from during the operation "Hit the Blocks." [*Id.*].

Given the evidence adduced at trial, Petitioner is misconstruing the testimony of the numerous law enforcement officials who explained that CI Barr was not responsible for identifying *by name* the individuals depicted on the video recording. At trial, Det. Dykes testified that immediately following CI Barr's purchase of drugs from Petitioner, CI Barr gave a brief overview of the transaction. [ECF No. 12-2 at 143]. Det. Dykes also testified that CI Barr's statements were corroborated by his own observations of the video recording and what he overheard as events unfolded. [*Id.*]. At the suppression hearing, Dykes explained he did not have any handwritten notes and the probable cause affidavit was based not just on what he overheard live during the sale of drugs by Petitioner to CI Barr, but, "for the most part," it was based on the videotape. [ECF No. 12 at 50]. Further, CI Barr provided unequivocal testimony that he was certain Petitioner was the individual depicted on the videotape.

Under Florida law, absent evidence that "a policy was not initiated in good faith," a finding of bad faith is not imputed to law enforcement officers who failed to video tape a defendant's field sobriety test. *See State v. Powers,* 555 So. 2d 888, 890 (Fla. 2d DCA 1990) (citing *Alsop v. Pierce,* 155 Fla. 185 (1944)). In *Powers,* the court found there was "no material difference between the destruction of evidence by the state's affirmative act and its destruction by the state's failure to act where it has a ready means of preserving the evidence with a minimum of inconvenience." *Id.*

(citing *State v. Hills,* 467 So. 2d 845 (Fla. 4th DCA 1985)). As in *Powers,* the issue here is one arising not from a failure to preserve evidence, but from an allegation that law enforcement failed "to gather and preserve evidence in a particular manner." *Id.* While law enforcement has a duty to preserve evidence it has gathered and taken possession of, it "does not have a constitutional duty to perform any particular tests." *Id.* (citing *Youngblood,* 488 U.S. at 58).

When the identical issue was raised on direct appeal, Respondent relied upon *Powers,* arguing that Petitioner had not met his burden of establishing a constitutional violation. The appellate court rejected Petitioner's argument when it affirmed Petitioner's judgment of conviction on direct appeal in a decision without written opinion. *See Haslom v. State,* 241 So. 3d 159 (Fla. 4th DCA 2018), [ECF No. 11 at Ex. 17].

Petitioner has not demonstrated that the state withheld favorable, exculpatory evidence. Given this record, Petitioner has not demonstrated that the rejection of the claim in the state forum was an unreasonable application of federal constitutional principles. *See Williams, supra*. Relief is not warranted on this basis.

2. *Youngblood* Claim

Petitioner has also not demonstrated in the state forum or here a legally sufficient destruction-of-evidence claim. He has not shown that the prosecution acted in bad faith, much less that they failed to preserve favorable identification evidence. CI Barr identified Petitioner in court as the individual depicted in the videotape. Petitioner's suggestion that law enforcement should have obtained a written statement from CI Barr or shown him a live or photographic line-up is not constitutionally mandated. *See Youngblood,* 488 U.S. at 58.

27

Petitioner has not shown here nor in the state forum that law enforcement failed to preserve favorable exculpatory evidence that would have any value to Petitioner's misidentification defense. Moreover, there is no reasonable probability that the failure to conduct or otherwise preserve evidence, as suggested, would have changed the outcome of the trial. To the contrary, given the evidence adduced at trial, there is no reasonable probability that the jury would not have found him guilty. *See e.g., United States v. McCray,* 345 F. App'x. 498, 501-502 (11th Cir. 2009).

Rejection of this claim on direct appeal did not violate applicable federal constitutional principles. *See Williams, supra.* Relief is therefore not warranted.

## VII. Cautionary Instruction Re *Clisby*[7] Rule

The Court is mindful of the *Clisby* rule that requires district courts to address and resolve all claims raised in habeas corpus proceedings, regardless of whether relief is granted or denied. This Court has considered all of Petitioner's arguments in support of his claims for relief. *See Dupree v. Warden,* 715 F.3d 1295, 1299 (11th Cir. 2013) (finding that courts shall review a petitioner's claims so long as the claims are presented in a clear and simple language so that the court may not misunderstand it). Petitioner has failed to demonstrate how the state courts' denial of the claims, to the extent they were considered on the merits in the state forum, were contrary to, or the product of an unreasonable application of, clearly established federal law. To the extent a claim was not considered in the state forum, under *de novo* review, the claim does not warrant relief. Whether a precise argument was not specifically addressed here or in the state forum, all arguments were considered and found to be devoid of merit, even if not discussed in detail.

---

[7] *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992).

## VIII. Evidentiary Hearing

To the extent Petitioner claims he should be granted an evidentiary hearing on these claims, his argument fails because he has not met the statutory threshold for granting a hearing. In a habeas corpus proceeding, the burden is on Petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.,* 647 F.3d 1057, 1060 (11th Cir. 2011). In reviewing a state habeas corpus petition in which Petitioner failed to develop the factual basis for a claim in the state court proceedings, the district court "shall not hold an evidentiary hearing on the claim unless the applicant shows that --(A) the claim relies on--. . .(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offenses." *See* 28 U.S.C. § 2254(e)(2). "[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams,* 529 U.S. at 432. The Supreme Court has also made clear that, § 2254(e)(2) "continues to have force" and restricts federal courts from considering new evidence where a claim was not adjudicated on the merits. *Cullen,* 563 U.S. at 185 (citing *Williams,* 529 U.S. at 427-29).

## IX. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell,* 556 U.S. 180, 183 (2009) *(*citing *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000)); *Wilkinson v. Dotson*, 544 U.S. 74, 78-83

(2005)). This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a district court has rejected a petitioner's constitutional claims on the merits, a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, as claims 3, 4, and 5 in this case, a petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

It is recommended that no certificate of appealability should issue. If Petitioner does not agree, he may bring this argument to the attention of the District Judge in objections to this Report.

## X. Recommendations

Based upon the above, it is RECOMMENDED that:

1.      the Petition [ECF No. 1] be DENIED;

2.      final judgment be entered in favor of Respondent;

3.      a certificate of appealability be DENIED; and,

4.      the case CLOSED.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal

conclusions." *See* 11th Cir. R. 3-1 (2016); *see also* 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

SIGNED this 26th day of July, 2021.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:   **James Antwan Haslom**
      E-102537
      Wakulla Correctional Institution
      Inmate Mail/Parcels
      110 Melaleuca Drive
      Crawfordville, FL 32327
      PRO SE; and

      **All counsel of Record**

31